IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RANDY ALLEN SASSER, #151825,   )
   )
   Petitioner,   )
   )
v.   )   CASE NO. 1:09-CV-551-WHA
   )
   )
LOUIS BOYD, et al.,   )
   )
   Respondents.   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Randy Allen Sasser ["Sasser"], a former state inmate, on June 10, 2009.  In this petition, Sasser challenges a conviction for third degree escape imposed upon him by the Circuit Court of Houston County, Alabama on June 20, 2007.[1]  The trial court sentenced Sasser as a habitual felony offender to fifteen years imprisonment for this conviction.

_____

[1] In December of 2006, a Houston County Grand Jury indicted Sasser on one count of third degree escape in violation of Ala. Code § 13A-10-33(a).  Resp'ts' Ex. A - Doc. No. 11-1 at 9.  The indictment charged Sasser "did escape or attempt to escape from the custody of LADON JOYNER, in violation of Section 13A-10-33 of the Code of Alabama . . . ."  *Id.*  "A person commits the offense of escape in the third degree if he escapes or attempts to escape from custody."  Ala. Code § 13A-10-33(a).  This section "is addressed to any person who escapes from custody.  'Escape' is used in its ordinary accepted meaning and connotes an unauthorized voluntary departure from, or substantial severance of 'custody.'  'Custody' includes **any detention** pursuant to a lawful arrest or court order.  Section 13A-10-33 is applicable to all escapes . . . ."  Ala. Code § 13A-10-33 - Commentary (emphasis added).  The code defines custody as "[a] restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court . . . ."  Ala. Code § 13A-10-30(b)(1).

Sasser filed a direct appeal of his escape conviction in which he raised the following claims for relief:  (1) The State did not establish the requisite elements of the charged offense as it failed to prove the petitioner was in custody or under lawful arrest at the time of the alleged escape;[2] and (2) The trial court erred in refusing to give six of the petitioner's requested jury instructions.  Resp'ts' Ex. B (Sasser's Brief on Direct Appeal) - Doc. No. 11-2 at 5.

On February 22, 2008, the Alabama Court of Criminal Appeals affirmed Sasser's conviction for third degree escape in an unpublished memorandum opinion.  Resp'ts' Ex. D - Doc. No. 11-4.  The appellate court's opinion, in relevant part, reads as follows:

> Evidence at trial tended to show the following:  On July 25, 2006, Sasser and his counsel, Clay Wadsworth, appeared in Houston Circuit Court for three bad-check cases.  The prosecutor gave the courtroom security officer, Deputy LaDon Joyner, arrest warrants for eight additional bad-check charges against Sasser [issued by a district court magistrate on June 30, 2006].  Joyner told Sasser that he had eight new warrants for bad checks, that he was "in custody" and "under arrest" [on these new charges] and that he was "to stay in the courtroom, do not leave."  Joyner did not handcuff Sasser, place him into the inmate box or otherwise touch him.  He also did not advise Sasser of his <u>Miranda</u> rights.  After Joyner completed an arrest report on the new charges, he discovered that Sasser was not in the courtroom.  Sasser's counsel told [Joyner] that Sasser had stepped into the hall to make a telephone call, but

---

[2] In support of his challenge to the sufficiency of the evidence, Sasser asserted he was not given a *Miranda* warning at the time of the purported arrest and the lack of this warning "gives weight and credibility to the argument that Mr. Sasser was never under a lawful arrest, or in custody by any law enforcement official" on the date of the charged escape.  Resp'ts' Ex. B (Sasser's Brief on Direct Appeal) - Doc. No. 11-2 at 25-26.  Sasser, however, did not allege a violation of his right against self-incrimination as protected by *Miranda* and actually conceded "one could argue that Miranda does not apply because no statements were given by Mr. Sasser" during a custodial interrogation. *Id*. at 25.

Sasser never returned.  During the next several days, Joyner talked with Sasser by telephone three or four times and told [Sasser] that he had left the courtroom after being placed under arrest and that, if he did not turn himself in, he would be arrested for escape.  Sasser failed to [turn himself in to law enforcement officials as instructed by Joyner].  Clay Wadsworth testified for the defense [as its only witness] that he heard Joyner tell Sasser that he had eight additional charges but that he did not hear Joyner say that Sasser was under arrest.  Wadsworth testified that, in his opinion, Sasser was not under arrest or in custody for the eight additional charges.

I.

Sasser contends that he should not have been found guilty of escape in the third degree because, he says, the State failed to prove that he was ever in "custody" or "under arrest."  He argues, citing <u>California v. Beheler</u>, 463. U.S. 1121 (1983), that the ultimate inquiry in determining whether a person is in custody is whether there is a formal arrest or restraint of movement of the degree associated with a formal arrest.  He also argues, citing <u>California v. Hodari D.</u>, 499 U.S. 621 (1991), that an arrest is not complete unless there is an assertion of an intent to arrest, followed by either physical touching or submission of the arrestee.  Sasser argues that, although Deputy Joyner may have intended to arrest him, complete arrest and custody never occurred because there was no evidence that he was restrained or physically touched by any officer.  He also argues, citing <u>Ex parte McReynolds</u>, 662 So.2d 886 (Ala. 1994), that he was not given <u>Miranda</u> warnings and that, if a person is not in custody for the purposes of receiving <u>Miranda</u> warnings, he cannot be in custody for the purposes of the escape statute.  He further argues that the eight new arrest warrants reflect an arrest date of September 22, 2006, rather than July 25, 2006.  [This portion of each respective warrant reflects execution of the warrant by arresting the defendant and either receiving an appearance bond or committing the defendant to jail.]

"A person commits the offense of escape in the third degree if he escapes or attempts to escape from custody."  § 13A-10-33(a), Ala. Code 1975.  "Custody" is defined as "[a] restraint or <u>detention by a public servant pursuant to a lawful</u> arrest, conviction or <u>order of court</u>."  § 13A-10-30(b)(1), Ala. Code 1975.  (Emphasis added.)  The State was not required to prove physical touching or arrest in order to prove that Sasser was in custody.

Deputy Joyner testified that he told Sasser that he had eight arrest warrants, that he was in custody and that he was not to leave the courtroom.  This testimony was sufficient to establish that Sasser had been detained by a public servant pursuant to eight lawful court orders [in the form of the arrest

warrants].  The arrest warrants apparently were not executed until September 22, 2006.  However, the State was not required to prove that Sasser's arrests had been completed in order to establish that he was in "custody" [for purposes of committing an escape] as defined in § 13A-10-[33](a).  <u>Beheler</u> and <u>McReynolds</u> are inapplicable because they address custody requirements for <u>Miranda</u> protection, rather than custody as defined [by Alabama law] to prove escape.  <u>Hodari D.</u> is inapplicable because the escape statute does not require a completed arrest [but may be proven by escape from restraint or detention by a public servant pursuant to a lawful  court order].

II.

Sasser contends that the trial court erred in refusing to give [six of] his requested jury charges [including charge number 8 on the relationship of custody and <u>Miranda</u> warnings].  However, his argument cannot be considered [with respect to those jury charges other than charge number 8 due to a procedural default - Sasser did not properly preserve the issues for appellate review].  His argument is without merit with regard to charge 8.

. . . .

Sasser's requested charge 8 stated the following: "Ladies   and Gentlemen, if a person is not in custody for purposes of receiving <u>Miranda</u> warnings he cannot be in custody for purposes of the escape statute.  <u>Ex parte McReynolds</u>, 662 So.2d 886 (Ala. 1994)."  Sasser argued that this charge was "a correct statement of law" and that it should be given because "there was some testimony about him not being Mirandized and that [Deputy Joyner] never gave him his <u>Miranda</u> rights."  The trial court found that the charge was confusing and inapplicable, stating,"<u>Miranda</u> only comes into play if you take a statement from the defendant . . . or you're going to use something he said against him, which is not in play."

<u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966), requires law enforcement officials to give a defendant certain warnings  prior to "custodial interrogation."  "Custodial interrogation" means questioning which is reasonably likely to elicit an incriminating response.  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301-12 (1980).  Deputy Joyner testified that his questions to Sasser [after advising him he was under arrest and not to leave the courtroom] concerned general information [such as his date of birth, social security number and current address necessary] to fill out the arrest report.  The trial court may refuse to give a requested jury charge when the charge is confusing or is not predicated on a consideration of the evidence.  <u>Riley v. State</u>, 875 So.2d 352 (Ala. Crim. App. 2003).  Because Sasser was not subjected to custodial interrogation, the trial court did not abuse its discretion by refusing

4

to give requested charge 8.

       For the foregoing reasons, the judgment of the trial court is affirmed.

Resp'ts' Ex. D - Doc. No. 11-4 at 1-7 (footnotes omitted).

Sasser filed an application for rehearing which the Alabama Court of Criminal Appeals overruled on March 14, 2008. Resp'ts' Ex. F - Doc. No. 11-6. Sasser then filed a petition for writ of certiorari with the Alabama Supreme Court in which he argued the Alabama Court of Criminal Appeals erred in finding the State established the "in custody" element of the escape statute and as a consequence thereof improperly determined his actions constituted an escape. Resp'ts' Ex. G - Doc. No. 11-7 at 8-10. The Alabama Supreme Court denied the petition for writ of certiorari on June 13, 2008 and the certificate of judgment issued on this same date. Resp'ts' Ex. H - Doc. No. 11-8.

Sasser initiated this 28 U.S.C. § 2254 action on June 10, 2009 in which he asserts the following claims for relief:

> 1. "*Miranda* . . . exist[s] in every arrest situation[.]" *Petition for Writ of Habeas Corpus - Doc. No. 1* at 5. "Sasser was not read his [*Miranda*] rights when . . . approached by . . . Ladon Joyner [in open court on the date of the alleged escape]." *Id*. Deputy Joyner "did not have <u>custody</u> of SASSER, nor was there any type of seizure or arrest . . . . [T]here was no restraint of SASSER'S freedom of movement to suggest an official arrest . . . . If JOYNER did tell SASSER he was <u>under arrest</u> then he was required to give Miranda warning prior to talking to . . . SASSER . . . . Therefore, SASSER . . . was not under arrest and . . . could not have ESCAPED from any such ARREST or

5

CUSTODY." *Id*. at 8-9.

2. The state courts erred in determining the "question of arrest, custody, escape" as his actions did not constitute an escape under state law. *Petition for Writ of Habeas Corpus - Doc. No. 1* at 5. When Joyner left Sasser in the courtroom with his attorney Sasser believed he was free to leave. *Id*. at 10. "SASSER'S person was not seized under Fourth Amendment meaning. Therefore, no arrest, no custody and no escape had occurred." *Id*. In sum, the evidence presented by the State was insufficient to support a conviction for third degree escape.

3. The indictment is deficient because the requisite number of grand jurors did not issue the indictment as the true bill fails to clearly indicate the exact number of grand jurors. *Petition for Writ of Habeas Corpus - Doc. No. 1* at 6. "The form . . . [is] white-outed and written over to change the data" regarding the number of grand jurors and appears to reflect only 10 grand jurors when state law requires at least 12 grand jurors concur in the finding of a true bill. *Id*.[3]

4. Alterations without Sasser's permission appear on the true bill regarding the number of grand jurors and on the arrest warrants with respect to the date of issuance by the magistrate. *Petition for Writ of Habeas Corpus - Doc. No. 1* at 6, 12.

_____

[3] This assertion is not supported by the record. The true bill attached to the indictment indicates the grand jury which issued the indictment consisted of 16 members. Resp'ts' Ex. A - Doc. No. 11-1 at 10. Although Sasser alleges the document is modified by a handwritten notation to show 10 grand jurors, careful review of the true bill demonstrates a notation of 14 grand jurors is corrected to reflect presentation of the indictment to the trial court "in the presence of 16 grand jurors." *Id*.

> 5.  Counsel provided ineffective assistance because he (i) did not use other forms of escape to establish Sasser was not in custody for purposes of a felony escape, and (ii) failed to challenge the number of grand jurors present for issuance of the indictment. *Petition for Writ of Habeas Corpus - Doc. No. 1* at 6, 11-13.

In their answers to the petition, the respondents argue the claims pending before this court entitle Sasser to no relief.  Specifically, the respondents contend all of Sasser's claims for federal habeas relief, with the exception of his challenge to the sufficiency of the evidence, are procedurally barred from review because Sasser failed to present these claims to the state courts as required by the State's procedural rules either at trial, on direct appeal or in a Rule 32 petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("Under the procedural default doctrine, we will not consider on federal habeas corpus review a claim that was not adequately presented to the state court in

7

compliance with the state's procedural requirements."); *Collier v. Jones*, 910 F.2d 770, 772 (11th Cir. 1990) ("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

In order to provide the state courts with the requisite full and fair opportunity to address his claims, "the petitioner [must] 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right. *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)). Exhaustion is not satisfied 'merely' if the petitioner presents the state court with 'all the facts necessary to support the claim' or even if a 'somewhat similar state-law claim was made.' *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted)." *Pearson v. Sec'y for Dept. of Corr.*, 273 F. App'x 847, 849-850 (11th Cir. 2008); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (when petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by applicable procedural rules, such claims are procedurally defaulted); *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally

defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile [due to the petitioner's failure to properly present his claims to the state courts]."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we . . . treat those claims now barred by state law as [procedurally defaulted providing] no basis for federal habeas relief."); *Gray v. Netherland,* 518 U.S. 152, 161-62 (1996) (when state-court remedies are no longer available because petitioner failed to file a direct appeal or properly exhaust his state post-conviction remedy, petitioner procedurally defaulted on his claims and is precluded from obtaining relief on these claims in federal habeas proceeding); *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas . . . .").

With respect to Sasser's claim challenging establishment of the "in custody" element and the resulting determination he committed an escape, the respondents argue Sasser is entitled to no relief from this court as the state courts properly adjudicated this claim on the merits. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) (habeas petitioner whose claim was adjudicated by a state court on the merits entitled to no relief from federal court unless he demonstrates requirements of 28 U.S.C. § 2254(d)); *Williams v. Taylor*, 529

U.S. 362, 364-65 (2000) (With respect to claims adjudicated on the merits by a state court, federal habeas relief is available only where the state-court adjudication resulted in a decision that was "contrary to" or "an unreasonable application" of clearly established federal law as determined by holdings of the United States Supreme Court). A federal court may also grant habeas relief on an adjudicated claim if the state court's adjudication of the claim constituted "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In addressing the sufficiency argument, the respondents maintain the Alabama Court of Criminal Appeals correctly determined the evidence presented at trial "was sufficient to establish that Sasser had been detained by a public servant pursuant to eight lawful court orders" when he absconded from the courthouse thereby establishing the custody element of third degree escape. Resp'ts' Ex. D - Doc. No. 11-4 at 4.

Upon review of the § 2254 petition, the answers of the respondents, Sasser's response to the answers, the state court record, opinions issued by the state courts and applicable federal law, this court finds no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes the petition is due to be denied.

## II.  DISCUSSION

### A.  Adjudicated Claim

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as

amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."  *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.  Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13.

The Court subsequently explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme

11

Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411.

Federal district courts are likewise directed to determine whether the state court based

its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639. The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . . ." 538 U.S. at 636, 123 S.Ct. at 1851. As is clear from the foregoing, a federal "district court's review . . . [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Sasser presented his challenge to the sufficiency of the evidence on direct appeal of his escape conviction. After discussion of the evidence presented by the State at trial and discussion of applicable state law, the Alabama Court of Criminal Appeals decided this issue adversely to Sasser. Resp'ts' Ex. D - Doc. No. 11-4 at 4 ("'A person commits the offense of escape in the third degree if he escapes or attempts to escape from custody.' § 13A-10-33(a), Ala. Code 1975. 'Custody' is defined as '[a] restraint or <u>detention by a public servant</u>

<u>pursuant to a lawful</u> arrest, conviction or <u>order of court</u>.'  §13A-10-30(b)(1), Ala. Code 1975.

(Emphasis added.)  The State [under this statute is] not required to prove physical touching

or arrest in order to prove that Sasser was in custody . . . .  [The testimony of deputy Joyner

established] that he told Sasser that he had eight [new] arrest warrants [for him on bad check

charges], that [Sasser] was in custody, [that he was under arrest for those eight warrants] and

that he was not to leave the courtroom.  This testimony was sufficient to establish that Sasser

had been detained by a public servant pursuant to eight lawful court orders.").  Assessment

of Sasser's sufficiency claim is therefore appropriate under the provisions of 28 U.S.C. §

2254(d)(1).

    The critical inquiry on review of the sufficiency of the evidence to support a criminal

conviction is to determine whether the evidence could reasonably support a finding of guilt

beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307 (1979).

> But this inquiry does not require [this] court to "ask itself whether <u>it</u>
> believes that the evidence at the trial established guilt beyond a reasonable
> doubt."  . . .  [I]nstead, the relevant question is whether, after viewing the
> evidence in the light most favorable to the prosecution, <u>any</u> rational trier of
> fact could have found the essential elements of the crime beyond a reasonable
> doubt.

*Id*. at 318-19 (emphasis in original; citations and footnote omitted).

    The Alabama Court of Criminal Appeals did not decide Sasser's claim attacking the

sufficiency of the evidence regarding his conviction for third degree escape under Alabama

law "differently than [the Supreme] Court has [in a case based] on a set a of materially

indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal

law.  *Williams*, 529 U.S. at 413.  Consequently, the state appellate court's rejection of the

challenge to the sufficiency of the evidence was not contrary to actual Supreme Court

decisions.  Further, a thorough and independent review by this court of the trial record

submitted in this case establishes that the State presented  evidence, when viewed in a light

most favorable to the State, provided a basis on which a rational trier of fact could have

found the essential elements of third degree escape.[4]  Thus, the state court's rejection of

Sasser's arguments was objectively reasonable and likewise constituted a reasonable

determination of the facts in light of the evidence presented by the parties.  Sasser is

therefore entitled to no relief from this court on his challenge to the sufficiency of the

evidence.

## B.  Procedural Default

The remaining claims for federal habeas relief are procedurally defaulted as Sasser

---

[4] Joyner testified "I went to [Sasser] and I advised him that I had new warrants on him for eight bad checks.  I had an arrest report.  I did an arrest report sitting there with him [obtaining general information from Sasser regarding his date of birth, Social Security number and current address].  Advised him that he was in custody, that he was under arrest for those eight warrants.  I executed all eight warrants.  I did an arrest report [on the eight new charges], and I advised him to stay in the courtroom, do not leave.  He could sit there with his attorney because he had not been in front of the judge on the other [original] three cases . . . .  I got busy with some other inmates . . . .  I looked around, and his attorney was sitting there, but I did not see [Sasser].  So I walked over to ask his attorney where he was at and he said [Sasser] had stepped out in the hall to call his mother.  [Sasser did not return to the courtroom for his appearance before the judge.  Thereafter,] I talked to him several times by telephone . . . .  [During these conversations], I advised him that he had left the court after I had placed him under arrest, and that I would give him an opportunity to come back and turn himself in.  And after I talked to him three or four different times on different days, in the last conversation I had with him I told him if he didn't come in the next day, that I was going to get a warrant on him for escape . . . .  He did not [turn himself in as I requested]."  Resp'ts' Ex. A - Doc. No. 11-1 at 88-90.

failed to present these claims to the state courts in accordance with the State's applicable

procedural rules.  *O'Sullivan v. Boerckel*, 526 U.S. at 845; *Henderson*, 353 F.3d at 891;

*Pruitt v. Jones*, 348 F.3d at 1358-59.  Upon thorough review of the answers filed by the

respondents and the state court records, the court gleans the relevant procedural defaults as

follows:

      (1) The stand-alone *Miranda* claim, i.e., Sasser not advised of his *Miranda* rights at

the time of the arrest in violation of his Fifth Amendment right against self-incrimination,

the challenge to the indictment based on a handwritten modification of the number of grand

jurors and the allegation regarding alteration of the issuance date on the arrest warrants are

procedurally defaulted because Sasser failed to properly raise these claims at trial and on

direct appeal.  In addition, the respondents argue the *Miranda* claim is without merit as it is

undisputed no custodial interrogation occurred and no statements were obtained from Sasser

which the State sought to use in the criminal proceedings.[5]  Moreover, it is likewise clear

---

    [5] Sasser does not allege law enforcement officers subjected him to custodial interrogation; rather, he vehemently argues he was never in custody and also concedes the officers did not question him or obtain any statements from him with respect to the charges.  In addition, the State did not attempt to introduce at any stage of the criminal proceedings related to his escape conviction any statement made by Sasser.  Thus, no violation of *Miranda* occurred.  *United States v. Roark*, 753 F.2d 991, 992-93 (11th Cir. 1985) ("*Miranda* . . . requires that a person be advised of constitutional rights before a 'custodial' interrogation.  It reflects the concern that the compulsive or coercive aspects of a custodial situation will cause a suspect to confess or to make incriminating statements involuntarily, not knowing of the Fifth Amendment protection against required self-incrimination . . . ."); *United States v. Savell*, 546 F.2d 43, 45-46  (5th Cir. 1977) ("*Miranda* only requires that a recital of the warnings precede [custodial] interrogation."); *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (protections of *Miranda* premised on pressures attendant to custodial interrogation and the necessary safeguards "to protect a defendant's [constitutionally protected] privilege against compulsory self-incrimination.  More specifically, the Court held that 'the prosecution may not use

Sasser's claim regarding the validity of the indictment provides no basis for federal habeas relief.[6]

(2) The claims of ineffective assistance of counsel are precluded from review under the doctrine of procedural default because Sasser failed to present these claims in a Rule 32 petition and this avenue of state review is no longer available to Sasser.

As a prerequisite to filing a federal habeas action, the petitioner must have properly

---

statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."); *United States v. Brown*, 459 F.2d 319, 322 n.2 (5th Cir. 1971) (rights protected by *Miranda* not implicated when no statements from defendant used as evidence); *Allen v. United States*, 384 F.2d 926, 927 (5th Cir. 1967) ("Miranda requirements . . . not relevant where no evidence [from interview of defendant] was introduced at trial.").

[6] A federal district court's review of a claim attacking the sufficiency of an indictment is limited to considering the adequacy of the notice afforded a petitioner through the state procedures. The Due Process Clause of the Fourteenth Amendment merely requires whatever charging method the State chooses to employ, it must give the criminal defendant fair notice of the charge against him to permit adequate preparation of his defense. *Jackson v. Virginia,* 443 U.S. 307, 314 (1979); *Faretta v. California,* 422 U.S. 806, 818 (1975). "The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction. *DeBenedictis v. Wainwright,* 674 F.2d 841 (11th Cir.1982)." *Heath v. Jones*, 863 F.2d 815, 821 (11th Cir. 1989); *Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir. 1980) (same). A review of the indictment issued against Sasser demonstrates it tracked the language of the state statute and incorporated all elements of the offense of third degree escape. Resp'ts' Ex. A - Doc. No. 11-1 at 9. Thus, the indictment was not fatally defective as it provided Sasser sufficient notice of the charge lodged against him so as to allow preparation of an adequate defense, and, therefore, "the state trial court was not deprived of jurisdiction." *Heath*, 863 F.2d at 821. Consequently, the indictment did not deprive Sasser of any constitutionally protected interest. To the extent Sasser bases his challenge to the indictment on an alleged violation of state law, he is likewise entitled to no relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes . . . . [A claim alleging violation of a state's] laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

exhausted state court remedies, either on direct appeal or in a state post-conviction petition,

28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365

(1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted)); *Kelley*, 377

F.3d at 1342-44 (11th Cir. 2004) (a petitioner cannot raise claims in federal court if those

claims, including the factual basis for the claims, were not first properly exhausted in state

court.).   To properly exhaust state remedies, the petitioner must fairly present every issue

raised in his federal petition to each appropriate state court, including the state's highest

court, alerting that court to the federal nature of the claim and a statement of the facts which

entitle him to relief.  *Duncan,* 513 U.S. at 365-66; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404

U.S. at 277-78.   "[F]or purposes of exhausting state remedies, a claim for relief in a habeas

corpus must include reference to a specific federal constitutional guarantee, as well as a

statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152,

162-63 (1996); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be

exhausted, a federal claim must be fairly presented to the state courts."); *Edwards v.

Carpenter*, 529 U.S. 446, 452 (2000) (The exhaustion requirement is not satisfied and a

procedural default occurs when "the ineffective-assistance claim was 'presented' to the state

courts [but] not presented in the manner that state law requires.").

   It is not sufficient merely that the federal habeas petitioner has been
through the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509,
512, 30 L.Ed.2d 438 (1971), nor is it sufficient that all the facts necessary to

support the claim were before the state courts or that a somewhat similar state-law claim was made, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." *Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (alteration in original).

Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). As we explained,

> allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's "full and fair opportunity to address the claim on the merits." The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the "serious and meaningful" exhaustion of claims that Congress intended.

*Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (holding that, where the habeas petitioner properly raised only one ineffective assistance claim on collateral attack in state court, he could seek federal relief based on that specific claim, but not based on other alleged attorney defects that were not presented to the state courts); *Maynard v. Lockhart,* 981 F.2d 981, 984-85 & n.1 (8th Cir. 1992) ("To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court."). Furthermore, habeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way. *See Weeks [v. Jones]*, 26 F.3d [1030] at 1044-46 [(11th Cir. 1994)] (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state"). In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice. In sum, to preserve a claim of ineffective

19

> assistance of counsel for federal review, the habeas petitioner must assert this
> theory of relief and transparently present the state courts with the specific acts
> or omissions of his lawyers that resulted in prejudice.

*Kelley*, 377 F.3d at 1343-44.   The court further advised that "[t]o ensure exhaustion,

petitioners must present their claims in this manner of clarity throughout 'one complete round

of the State's established appellate review process.'  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  As long as state supreme court review of

a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that

state must present their claims to the state supreme court to preserve those claims for federal

review, even if review by that court is discretionary.  *See id*. at 848-49, 119 S.Ct. at 1734."

*Kelley*, 377 F.3d at 1345.

Sasser acknowledges he failed to properly exhaust his federal claims regarding a

*Miranda* violation, invalid issuance of the indictment, improper arrest warrants and

ineffective assistance of counsel in the state courts.  It is also undisputed that no remedy

remains before the state courts in which Sasser can obtain review of these claims.  The

aforementioned claims are therefore precluded from federal review in accordance with the

procedural default doctrine.  Thus, this court may reach the merits of Sasser's procedurally

defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal

review of a procedurally defaulted claim if he can show both 'cause' for the default and

actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106

S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)]

. . . .  Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id.*"  *Henderson*, 353 F.3d at 892.

### 1.  <u>Cause and Prejudice</u>.

"To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir. 2002).

*Henderson*, 353 F.3d at 892.  In an attempt to demonstrate cause for his procedural defaults arising at trial and on direct appeal, Sasser asserts he received ineffective assistance of counsel during these proceedings.  Sasser also contends he did not file a Rule 32 petition because he believed it would have caused him to file his federal petition outside the applicable one-year period of limitation established in 28 U.S.C. § 2244(d)(1).  Additionally, Sasser maintains the state courts, especially the Circuit Court of Houston County, are biased and prejudiced towards him and any attempt to raise his claims in those courts would have been futile thereby excusing his procedural defaults.  In support of his futility argument, Sasser asserts "bias and prejudice [of the state courts] towards the Petitioner . . . [is] proven" by the use of an invalid indictment and the rulings denying him relief from his conviction.

21

Pet'r's Resp. - Doc. No. 22 at 2.

Initially, Sasser's conclusory and self-serving assertions regarding futility of presenting his claims to the state courts due to alleged bias and prejudice are not well taken. There is nothing before this court which indicates any bias or prejudice by the state courts against Sasser nor can the court countenance the existence of any evidence which would support this claim. The mere fact the state courts denied Sasser relief on his claims does not establish or even implicate bias or prejudice. Moreover, the arguments presented by Sasser relative to his perceived futility of exhaustion provide no basis for circumvention of the applicable procedural bars. *Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996) (alleged futility of presenting claim to state court on direct appeal does not establish cause for procedural default); *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573 (1982) (Perceived "futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial."). "Even if it was unlikely that his claim[s] would have been well-taken in state court, [Sasser] should have raised [them]." *Waldrop*, 77 F.3d at 1315. In addition, the conclusory and specious allegation of futility set forth by Sasser "fails to fit within the narrow exception for futility." *Howard v. Davis*, 815 F.2d 1429, 1430 (11th Cir. 1987).

Sasser's claim regarding potential running of the federal period of limitation is without factual or legal basis. If Sasser had first raised his claims of ineffective assistance of counsel in a Rule 32 petition, rather than filing a habeas petition with this court, the state

post-conviction petition would have tolled the applicable federal period of limitation. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Thus, bypassing an available state post-conviction relief due to a misunderstanding of legal principles does not establish cause for Sasser's procedural default on his claims of ineffective assistance of counsel. To the extent Sasser misunderstood the running of the federal period of limitation, any reliance on his *pro se* status and attendant lack of legal knowledge as cause likewise provide no basis for relief from the applicable procedural bar as neither an inmate's lack of legal knowledge, his failure to understand legal principles nor the inability to recognize potential claims for relief at an earlier juncture constitute an extraordinary circumstance sufficient to warrant such relief. *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990) (ignorance of the law fails to establish cause for a procedural default); *Smith v. Newsome*, 876 F.2d 1461 (11th Cir. 1989); *Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986); *Barksdale v. Lane*, 957 F.2d 379, 385-86 (7th Cir. 1992) (petitioner's *pro se* status does not constitute adequate grounds for cause); *see also Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law is not a factor which warrants relief from procedural bars); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194 (2001) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.' *Fisher v. Johnson*,

23

174 F.3d 710, 714 (5th Cir. 1999)."); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863 (2001) (lack of legal knowledge or legal resources, even in a case involving a *pro se* inmate, does not warrant relief from a procedural bar); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (relief from procedural bar not justified by fact that petitioner did not understand the law).

With respect to the assertion of ineffective assistance of counsel as cause for the defaults occurring at trial and on direct appeal, Sasser is procedurally defaulted on these claims as he failed to present such claims in an available state post-conviction action. Ineffective assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently raised and properly exhausted in the state courts. *Edwards*, 529 U.S. at 453 (A federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" unless the petitioner establishes "the cause-and-prejudice standard with respect to [the ineffective assistance claim]."); *Murray*, 477 U.S. at 489 ("[A] claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim). Sasser fails to establish cause and prejudice for the default on his claims of ineffective assistance of counsel. Thus, the claims of ineffective assistance of counsel cannot constitute cause

24

necessary to excuse Sasser's procedural defaults arising at trial and on direct appeal. Moreover, the court finds that none of the allegations of ineffective assistance of counsel in any way justify Sasser's failure to properly exhaust these claims in a Rule 32 action.

Based on the foregoing, the court concludes Sasser has failed to demonstrate cause for his failure to present his procedurally defaulted claims to the state courts in compliance with applicable procedural rules. Furthermore, Sasser has presented nothing which establishes the existence of actual prejudice emanating from infringement of federal law. Nevertheless, this court may still reach the merits of Sasser's procedurally defaulted claims in order to prevent a fundamental miscarriage of justice

2. **Fundamental Miscarriage of Justice**. Throughout his pleadings in this court, Sasser asserts he is innocent of the crime for which he stands convicted because the evidence presented at trial failed to demonstrate he was in custody or under arrest at the time of the escape. Sasser bases his claim of innocence on testimony provided by his witness at trial and admissions by the State's witnesses that law enforcement officials did not physically restrain him or advise him of his *Miranda* rights at the time in question.

The miscarriage of justice standard is directly linked to actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction

of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*.   "To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'  *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).   "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case."  *House v. Bell*, 547 U.S. 518, 538 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims."  547 U.S. at 537.  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.  *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-24; *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence.").  *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  513 U.S. at 324 (emphasis added).

Sasser has failed to make the requisite showing of actual innocence as he has

presented no "new reliable evidence" nor do his allegations suggest that any such evidence

exists which could satisfy the stringent standard set forth in *Schlup*. Sasser merely reiterates

the evidence previously presented at trial and argues this evidence failed to establish his guilt

of the offense. Sasser's procedurally defaulted claims are therefore foreclosed from federal

habeas review.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Randy Allen Sasser be DENIED; and

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the

Recommendation **on or before February 24, 2012**. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which a party objects.

Frivolous, conclusive or general objections will not be considered by the District Court. The

parties are advised that this Recommendation is not a final order of the court and, therefore,

it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the

District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 10th day of February, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE